States of America v. Austin. I will hear first from Mr. Briskman. Good morning to the honorable panel. My name is Josh Briskman. I represent Mr. Austin. I had the honor of representing him at the trial court level. I'm sure that everything has obviously been reviewed by this honorable panel for the sake of summation and framing everything up. We tried this case. He was indicted on two felon in possession counts. Right. He was acquitted of one and there's only one additional. Exactly. Exactly, Your Honor. And so the issues related to this appeal deal with that conviction and there are basically two issues. The first is that even despite affirmative representations by the government that certain evidence would not be utilized or elicited, specifically dealing with Mr. Austin allegedly being a drug dealer, which he was not charged with. That testimony conveniently came out very early on in one of the chief witnesses for the government on their questioning. We are not making an argument that that was intentional. We have no basis for saying that based on what was put on the record. However, it was certainly very convenient that that happened. I believe that there was a failure to adequately vet the witness beforehand and make sure that that very prejudicial evidence did not come in. So let me see if I can focus your argument a little bit. Yes, ma'am. And I speak only for myself, but on what I think this case comes down to, I agree there was error. Both of the things you raised I think were error. For me, the question is whether they were harmless beyond a reasonable doubt. And so if you want to address your arguments to why you think they were not harmless beyond a reasonable doubt, that would help me. So, Your Honor, again, he was not charged with dealing drugs. We affirmatively attempted to smoke out, if you will, whatever other evidence, including 404B evidence, would have been utilized by the government or attempted to utilize by the government. But how did it cause harmful error here, given that drugs were found in the backpack? That was going to come in regardless. It did come in. It was found at the same time, in the same place as the gun was found, and he was charged with a gun. So how does the fact that, I mean, how does it make it harmful here? Yes, ma'am, Your Honor. Because the fact that it came out, allegedly, that he was a drug dealer, and the marijuana that was found on scene was found in the same backpack as the gun, that created a great inference, I believe, with the jury that the two were connected, that the gun must be his because the gun was found with the drugs. But here's the problem with that. Yes, ma'am. The person who said that, Bradley, who said, he's my drug dealer, is also the one who said, it's his backpack. So, I mean, the jury could either decide to accept her testimony, you know, find that her testimony was credible or not. But once they decided to accept her testimony that the backpack was his, then anything in it was obviously his as well. If they decided to reject the testimony that the backpack was his, then it wouldn't have mattered whether or not he was her drug dealer. And then you also have the other evidence from all of the other people in the car saying the backpack wasn't theirs. The backpack wasn't there until Mr. Austin got into the car. You have the wallet with his ID being found right under or next to the backpack. You have the testimony, again, from Bradley saying that he turned around and took the wallet out of the red backpack while they were driving. So, it seems to me that the jury, if the jury was going to, the jury was either going to find her credible or not find her credible. And how does that affect the analysis? So my response to that question, Your Honor, is had that evidence not come in, had she not been permitted to say, I buy drugs from him, the jury could have easily concluded that the backpack belonged to the driver of the vehicle who the vehicle was also registered to because he admitted at trial and on the scene that he was a drug user, that he was high on marijuana at the time. So had she not been able to say that or had been appropriately precluded from saying that, like the government said, they were not going to elicit, then the jury could have easily concluded that it was the driver's backpack and the driver's gun. Except that we have the testimony that she saw him take his wallet out of the backpack. She said that. I tried to cross her very diligently on that. You're right. The jury obviously made a determination on that. But we can't get around the fact that they made that determination with that statement that he's a drug dealer. What about the fact that we also have the court, after the statement is made, did two things. The court initially said that she instructed, the court instructed Bradley, we are here about a gun case and we are not going to discuss drugs. And then the next day, when the jury returns, the court gives an instruction, yesterday you heard testimony from Mr. Bradley, from Ms. Bradley, that Mr. Austin was her drug dealer. I caution you that Mr. Austin is not charged with distributing drugs or for that matter any drug offense. Mr. Austin is on trial only for the offenses charged in the indictment. I caution you that you are to determine only if Mr. Austin knowingly possessed firearms that had traveled to interstate commerce after being convicted of a felony. Why isn't that curing the problem? So this may surprise the panel, but as a criminal defense lawyer, I'm not a big fan of curative instructions. I don't think they really work. And I hear you, and that is not an unreasonable position to take in the world of reality, I imagine. The problem is we have precedent which says that there is a presumption that juries follow instructions. Yes, ma'am, your honor. There is that law and I certainly understand that. I did not ask for a curative instruction on purpose. I asked for a mistrial because I did not think that a curative instruction could be good enough to unring that bell. I'll ask your friend on the other side the same question. Even assuming that curative instructions do work, what would this curative instruction have worked for, right? He wasn't charged with a drug crime, so the jury was told that they weren't there about a drug crime, but that wasn't really the issue, right? I think, I would think that a proper curative instruction would have said you shouldn't consider this evidence about drugs at all, not we're not here about drugs, right? Isn't there a fine distinction there? Whether you think either makes a difference, it seems to me that that might be two different things. So, I think that as trial counsel, if I would have objected to the curative instruction and offered one that I preferred, I think that's a bit of a trap for me. I think that that means that I've acquiesced to a curative instruction, which I don't want to do. Right, but I think, and you can correct me if I'm wrong, but I think Judge Grant's point is that this wasn't even a curative instruction because it didn't, a curative instruction would have been, you've heard this statement that he was her drug dealer, that cannot be considered, you must disregard that, that cannot be considered at all in this case, you know, something to that effect. But that wasn't what was said. She never said, the court never said disregard this statement. The court just said, we're not here on a drug charge. And so, the curative instruction, was it defective? I think it was, Your Honor. I will say, if you're asking me, I think it absolutely was. And I agree with the premise of the question that it did not go far enough. Had I said at trial, yes, I would like a curative instruction, it certainly should have gone farther than that and been specific that they shouldn't consider that evidence at all. Well, I mean, just for what it's worth, I don't see why you couldn't have said, I object to giving a curative instruction at all, I retain that objection, but if you're going to do it, that one isn't good enough. Couldn't you have done that? Maybe Your Honor. I might could have done that, but I think that I still run the risk of falling into the trap of acquiescing to the curative instruction if I suggest something at all that is better than what has been put out there or suggests some language. I do think that's a trap for trial counsel in that position in a criminal case. I think you have to either say you want a curative instruction or not. And I may be corrected on that, but that's my understanding of the law and how I've always done that at trial. So, we have a split verdict in this case. How does the split verdict not suggest that there was no prejudice to your client based on that drug dealer comment? I think that the two cases, although they were the same statutory charge, are just totally unrelated. And I think that the jury did take them all, although I really did not want to try them at the same time. I know that precedent allows the court to do that. And I don't think that it shows anything other than independent examination of both cases by the jury. I really don't know that in this case or in these cases that it means much more than that. They were two separate incidents entirely. Yes, but the comment, he was my drug dealer, was not, the juror heard it. The jurors heard it and then were evaluating two counts. I guess I just, I'm not understanding your argument about how if he was acquitted of one count, that does not suggest a lack of prejudice. Well, there was no allegation. A lack of harm. There was no allegation that drugs were an issue in the first case at all. It was just a gun in a car. And it was under the driver's seat in a car that was not his. So I just don't think that the drug comment really bled into the other case at all. It just was an issue. But in case number two, or whatever you want to call it, the case before us today, that was a really central issue in connecting him with the gun. The drugs and the gun. He's a drug dealer. That's a bell that I just really don't think, at the risk of sounding cliche, you can unring that bell. I just don't think you can do that after that. Even with the curative instruction. Is my time elapsed? Yes. Thank you very much, Mr. Briskman, and you've reserved five minutes. We'll hear next from Mr. Gray.  Good morning. May it please the court. Scott Gray for the United States. Austin asserts two independent claims of error. Assuming that any error occurred, both errors are harmless, and this court should affirm Austin's conviction. Well, let's talk about the error that your friend on the other side was talking about. I think that is the more troubling error. There was evidence that the driver of the car also used drugs. So, why wasn't it harmful for Ms. Bradley to connect the drugs and the gun together? Because the district court cut that off at the pass in a couple of different ways. The first was when Bradley went there from the outset, the district court very quickly told her, we're here about the gun. Right. But the problem, as we've discussed, is the district court never instructed the jury that it could not consider that evidence for any purpose. It just never did that. That is, I think it was a defective curative instruction. I mean, the court did say, we're here for a gun case, not a drug case. So, maybe it wasn't completely worthless, but I think it was defective when you get right down to the very bottom of it. Why is that enough here? Your Honor, I heard the court's questions on that, and I want to go to that instruction itself. The United States submits that even if it was an imperfect instruction, it still was a sufficient instruction here and that the district court likely conveyed that meaning to the jury. And I would note, and the pertinent discussion is on the second day of trial. It's docket entry 94, pages 3 to 6. Before the district court gives the instruction, it notes that instruction to the parties and effectively offers the parties an opportunity to critique that wording, saying, is there something I need to add? Is there something else I need to give? And I hear the comments from my friend on the other side that the district court would certainly heed any suggestions or any additions the district court made clear. So you think that the other side waived any kind of objection to the instruction? Yes, Your Honor. As to the instruction itself, respectfully, I think my friend did preserve an objection to the mistrial argument, but not to then say the curative instruction was insufficient because he did not propose that wording, nor did he say to the district court essentially what he has argued this morning, which is I don't want any curative instruction at all. I'm concerned that that may attract the jury's attention to the issue. I would respectfully submit that the district court's posture here is that the court was very interested in the party's positions, and if the defendant had asserted that, the district court might well have said, well, I'm going to avoid that. I also will note in addition to the curative instruction, the district court gave a final instruction noting that the defendant was only on trial for the crimes charged in the indictment. But the problem is that that instruction does not disjoin the gun from the drugs that are found, right? And they're found together in the backpack. And so what I'm understanding your friend on the other side to be arguing is that by saying he was my drug dealer, she linked the gun with the drugs. And so when the gun was found with the drugs, the jury somehow found her statement more credible that it was Mr. Austin's. I would break the issues up slightly differently, Your Honor, in that what Bradley's statement alluded to were past drug exchanges, that she had a prior relationship with Austin that had involved drugs. The fact that there were drugs in the vehicle was something that had already come out at the trial at that point. The defendant referenced the drugs in the backpack in his opening statement. He pressed the officer who testified. Except that he said that they weren't his. Correct. He disclaimed any ownership of the drugs and said that essentially the drugs were – but there was no question that there were drugs in the vehicle. It was not a drug-free trial, as it were. So the drugs that were there were, in essence, fair game. The district court's concern and the party's concern, because the district court essentially treated this as an effort to get at 404B evidence, essentially that there were other transactions or other events that occurred. And the district court was trying to head that off when it told the jury the defendant is only here about the drugs – I mean about the gun. But you've made the argument here that this would be appropriate under 404B anyway because drugs and guns go together, right? We argued in the alternative that they're intrinsic evidence. Essentially that context, setup, or motive is appropriate. I don't think that these were ever noticed as 404B as such. And so I think the district court is correct insofar as it was 404B evidence. No, I mean, I get it. But I think you're making a point that actually – in your alternative argument – that actually supports the defendant, which is drugs and guns go together. People see these things as intrinsically related. Therefore, it would have been allowed under 404B because these things are so tied together. How does that not blow up your argument that the jury could just easily distinguish between those two as totally separate acts? It doesn't because the conflation doesn't work in that way, number one. And number two, the district court made it clear that that was not fair game here. Let's go with number one. Give me your explanation on number one, please. The argument is that the fact that there were drugs in the vehicle may support the use of the gun to protect drugs on that occasion. The fact that one of the witnesses alluded to prior occasions, it was fair for the jury to know how they knew each other, how they ended up in that vehicle. This court's precedent says that a – You're not – you're not actually arguing that it was not error for this statement to be admitted, are you? I'm arguing respectfully, Your Honor, that it would not have been an abuse of discretion to allow a brief explanation – If you had provided notice, but you didn't. The context, setup, or motive, Your Honor, is intrinsic to the crime itself. It's part of the story of the crime. Okay, but let's get to my point, which is that you have to provide notice of 404B evidence when it's requested as it was, and you did not, right? Isn't that true? That's correct, Your Honor. In fact, you said, we are not going to rely on this kind of evidence. Our argument was that it was not Rule 404B evidence, that there's a difference between Rule 404B evidence and intrinsic evidence. But if you had been planning on bringing that in, I mean, you – the defense of drug dealing, and the defendant, the counsel, presumably planned the trial strategy on that basis, and then that trial strategy becomes more challenging, certainly, when the jury has heard that this person is a drug dealer. And then when they're told not, don't consider that at all, but don't consider that for a drug charge, you know, why doesn't that infect the trial in a way that creates a problem for you? Well, to be very clear, it was an unexpected revelation. The United States did not expect the witness to testify in that way.  It doesn't cause a problem for us because the district court stopped it before it delved into specifics. It was a single response. That response did not get into any specifics of drugs that Austin had provided. The United States did not ask why Bradley had gone to meet Austin that day and to whether there was a drug exchange intended for that particular day. The district court headed that off at the pass. So whether it would have been an abuse of discretion to admit or not, the district court said, that's not what this trial is about. And I would note that when the district court gave the curative instruction to the jury, it also looked at the jurors, or it appears from the cold record that it did, because it essentially asked, do you understand, and then says, okay, and then the trial proceeds. And so the question really for the court today is, does a single response, a single response about drug activity, end up contaminating this case when there was a curative instruction given, when there was no objection to the curative instruction that the district court provided, and when there was a final instruction that the jury was only to consider those charges, and for good measure, there was a split verdict. And so I will recognize that the two charges were distinct. A different body of evidence went to both. But when the court looks at taint like this, the question that the court looks at is, was the jury somehow inflamed by knowing this information about a defendant? Well, I don't know that inflamed is the word. I think it's that was the jury's, was the jury's view of the evidence prejudiced in favor of finding that the defendant committed this crime because they thought that he, that it might make sense that he did this because he was a drug dealer. I don't know that they have to be passionately inflamed about that. They just have to make, frankly, the somewhat natural A to B. But the reason we have these restrictions is because that's a somewhat natural A to B. I think the standard that the court has articulated, Your Honor, particularly when there's an instruction given, is was there incurable prejudice? Was the remark so difficult or so inflammatory or so problematic that the jury went ahead and convicted the defendant anyway? What if we find that the curative instruction was not effective? How do you show that there was no prejudice to the defendant by the remark? Taking the curative instruction out? Yes. Then I would suggest that there was a strong circumstantial case that was built around a four-legged stool of evidence to connect this defendant to the gun. The first leg was the video evidence itself. The second was Bradley's statement that she turned around and saw Austin remove the gun, remove the wallet and place it near the backpack. The third leg was Officer Long, the testifying officer's testimony that he saw the wallet near the backpack. And then the fourth was that the other occupants of the vehicle disclaimed ownership of the firearm. And so that four-legged stool stands regardless. Also, separate from that, the jury heard evidence about drugs regardless. The defendant's argument was that he didn't possess anything inside the backpack. So the jury knew... But the driver was high on drugs, right? That's... So why wouldn't the jury easily... If I'm in the jury, I might think, well, we know the driver was high on drugs and this other gentleman is a drug dealer, so you might be weighing those two things. Whereas if you don't know that the other person is a drug dealer, maybe you naturally assume that the drugs belong to the person who's high. I think the answer is, Your Honor, all of that came out at trial, certainly about the driver. And the only thing that came out about Austin was Bradley's admission that she knew him because he had dealt drugs to her in the past. Again, there was no specific testimony about what was going to happen on this occasion, why they were there, why it was together. This was essentially a biographical question in trying to place the jury understanding how these individuals ended up in a vehicle together, how they knew each other. The United States expected her to testify that Austin was a friend, that they had a friendly relationship. So what's the story, then, for why he had the gun if he's not a drug dealer? What's the story you tell at trial? Simply that the defendant possessed the gun inside the backpack for any reason. He could have had it to protect the drugs, he could have had it to protect himself. The United States' position throughout the trial, irrespective of Bradley's testimony, was that Austin possessed the red backpack and he possessed everything inside of it. The drugs, the gun. It was the gun that was the basis for the criminal charge that he ultimately faced, but that was the United States' case, and it presented a strong circumstantial case with the four-legged stool that I mentioned earlier that remains the same, irrespective of that singular answer. And I also would note, we've talked about harmlessness beyond a reasonable doubt today. We would submit, for purposes of the burden, that the error that we're talking about here is ultimately an evidentiary error, a non-constitutional error, for which a lower standard of harmlessness applies. Namely, is there substantial additional evidence of the defendant's guilt? And the United States admits that it has readily cleared that bar here. And so with that, unless the court has further questions, we respectfully would ask the court to affirm Austin's conviction, because assuming any error, it was harmless. I actually have a question for you on the Confrontation Clause issue. Do... Do you think that the... I assume you've argued that there's no Confrontation Clause violation and that if there is one, it's harmless, right? If we were to say that there's no Confrontation Clause violation, would that open the door for videos of these types of stops to be played with whatever statements officers are making? And the argument would be, well, they're just kind of describing what's going on at the time, so that's not a Confrontation Clause problem. In short, no, Your Honor. It would remain a case-by-case inquiry with the ultimate question being, is it testimonial? I also would note that there's sort of two questions at play. One is the Confrontation Clause and the other is the rules of evidence. The United States' position is that in the mine run of cases, the rules of evidence provide a sufficient way to parse out any statements that need to be excluded. And what the Confrontation Clause is getting at is essentially what the court said in Crawford. It's stuff that stands in for a civil ex parte examination or an interrogation. And those words, examination and interrogation, appear throughout the Confrontation Clause jurisprudence because it really is getting at what is a stand-in for testimony. And an active discussion between two colleagues during a pending investigation does not have those hallmarks of formality that are consonant. I think you're going to find that in a lot of body cam videos though. And you could learn a lot. I mean, that's why you have an officer take the stand to describe what they saw. And if a body cam video is just as good and not a Confrontation Clause problem, why wouldn't the government just start playing these videos and then letting the jury sort it out rather than subjecting those witnesses to cross-examination? Well, I think that there's a difference, Your Honor, between video and statements. And so video, whether it's collected by body camera, whether it's collected by surveillance, whether it's collected by another source, is omnipresent in cases. Sure, but I assume you wouldn't want to play the video without audio, right? That's not as useful to you. Because the commentary kind of describing what's going on is helpful, right? I actually think here the video was the damning piece of evidence. The audio, if anything, cut both ways. It was more of a Delphic sword. It did help the United States in some ways. But it also bolstered the defendant's defense in other respects. And so the ultimate issue is that in a lot of this video, there may be three, four, five, or ten layers of cross-talk. And discerning and defining which of those is problematic could lead to artificially redacted video that removes video of a lot of its utility. And it's our position that usually this would be admissible to show the course of the investigation. And as this court recently showed in Hawley, if there's any concern about this type of statement being used for its truth, the court could give a limiting instruction saying, none of the audio that you're going to hear is being used for the truth of the matter being asserted. Or the officers could just be called to the stand. Right? If those officers are available, then they could be. But as this video demonstrates, there may be three or four layers of cross-talk with dispatchers, with unknown voices. And so that won't always be possible to even eliminate, this is the voice that you're hearing on the cross-talk. I think the court's recent decision in Hawley, again, lays out in a compelling way with bystander discussions a very similar analysis that this court may look to today. I recognize that I'm over time, and unless there are other questions, I respectfully would ask the court to affirm. Thank you, Your Honor. Thank you very much, Mr. Gray. And Mr. Riskman, you've reserved five minutes. Yes, ma'am, Your Honor. Picking up on the Confrontation Clause issue, videos are interesting to me in my practice because we like to think they tell the whole story because you're looking at it. But in fact, they can be incredibly misleading because you only see what is in the video. You don't see what's around it. You don't see what happened before it. You don't see what people are doing outside the frame. And that is a real problem in this case. But how is it prejudicial here? Because then the rest of the video keeps playing, and you see in the video that the wallet is found, you know, where the wallet is in relation to the backpack. And that's really the whole point of it, right? That is really the whole point of it, Your Honor. These things turn on minute details a lot of times, and this is one of them. Right. So why is it prejudicial? Because I do not, from the video, this is my view of it, and this video is a little bit subjective, and people can actually, I think, honestly disagree about what it shows. My view of the video and as to why it's prejudicial that AWOL wasn't there was you cannot see where the wallet is until after the backpack is moved. That is a big point for us. And nobody can say for sure where the wallet was before the backpack was moved except for Officer AWOL. I like to call him Officer AWOL. I know that's a little cute, but he didn't show up, so that's why I nicknamed him that. Let me ask you something. Why does it matter if it was under the backpack or immediately next to the backpack? How does that affect your client's case? I think if it's under it, it's much more in proximity to it, and it basically says these things go together. You have multiple people in a back seat, two people in the back seat, four people in the car in this case. If the wallet is in a different location or if the officer on cross is shown to have misrepresented where the wallet actually was, which is really what I wanted to try to do with Officer AWOL, but I could not because he was not present, that could have seriously changed the verdict. I think that could have affected the outcome drastically. Because if I was able to question the officer's credibility, then the placement of the wallet is totally in question in the jury's eyes. And that would have greatly removed my client's proximity, if you will, or connection to the backpack where everything was found. So we were severely hampered by that. And it would be very easy to say well the video shows it. But it really doesn't. Because you can't see what it was before until after the scene is not tampered with, but affected by the law enforcement officer's actions who never came to trial to testify about those things. And the district court judge is really the one that honed in on this issue immediately after there was some utterance by Dr. AWOL saying where the wallet was. Because we had fleshed this out before. I had objected to any statements in the body cam video that was here say pre-trial. That was not granted, but the court was keyed into it. And that's why the district court, when that comment was made, said come on up. And basically said on the record that it was there. But at the end of the day after briefing said what you're inquiring to me, your honor, that it was basically harmless because of the video. And I do not accept that and argue stringently that the video is not dispositive in this case. And that had I been able to examine the officer, I could have made inroads on his credibility and potentially changed the outcome of the trial. I don't know if there are any other questions. I know I have 58 seconds left, but I think most of the issues have been covered. This was a real honor for me today. I've never appeared before the 11th Circuit. Thank you. Thank you so much. And we know that you were appointed and we appreciate your accepting the appointment and so capably discharging your duties. Thank you. All right. Our next